[Counsel Listed on Signature Page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

APPLE INC.,

Movant,

v.

GOOGLE INC.,

Respondent.

Case No. 13-MC-80146-LHK (HRL)

**Discovery Dispute Joint Report No. 1**

Movant Apple Inc. and Respondent Google Inc. hereby submit this Joint Report No. 1 and identify the following issues that are the subject of this report: Request Nos. 56, 57, 58, 63, 43, 5, 6, 53 and 54, and Topics No. 49, 52, 35, 7, 42 and 43 in Apple's subpoena to Google. Lead counsel for Apple and Google met in person to discuss these issues on July 24, 2013, in Austin, TX, which lasted approximately 1.5 hours. Lead counsel then participated in a follow-up telephone conference on July 26, 2013, which lasted approximately 20 minutes. Apple and Google reached a compromise regarding all but one of the above-referenced discovery disputes or, in some instances, agreed on a framework for resolving the issues.

The close of fact discovery in Consolidated Case Nos. 1:10-CV-23580-RNS and 1:12-CV-20271-RNS (U.S.D.C., S.D. Fla.) (the "Florida Case"), which is the underlying civil action for which Apple is seeking discovery from Google, is November 1, 2013. Lead counsel for Apple and Google hereby attest that they have complied with Judge Lloyd's Standing Order Regarding Civil Discovery Disputes.

*<u>/s/ Mark Davis</u>*
Mark Davis, Lead Counsel for Apple Inc.

*<u>/s/ Amy Candido</u>*
Amy Candido, Lead Counsel for Google, Inc.

## I. Description of the Dispute & Relevant Facts

On August 27, 2012, Apple served Google with a Subpoena setting forth various document requests and deposition topics. *See* Ex. A. On September 10, 2012, Google served its objections and responses to Apple's Subpoena. After discussing various discovery issues under the Court's Standing Order, the parties have reached compromises regarding all but one. This Joint Report details those compromises, as well as the parties' positions and proposals on the issue remaining.

## II. Issues on Which the Parties Have Reached a Compromise

### A. Request Nos. 56, 57, 58, 63; Topic Nos. 49, 52

The parties have reached the following compromise with respect to this discovery: Google will produce, following a reasonable search, non-privileged documents concerning the sale to Arris that also relate to this litigation or the asserted patents, as well as any documents concerning the sale of Arris that relate to or address the value or importance of the Motorola set-top box business or Motorola's patent portfolio. Google will produce any responsive internal documents and presentations concerning negotiations with other prospective buyers, but not actual communications with other prospective buyers. Google has committed to completing this production by September 4, 2013. Google will also provide Rule 30(b)(6) testimony on this subject matter.

### B. Request Nos. 5, 6, 53, 54; Topic Nos. 7, 42, 43

The parties have reached the following compromise with respect to this discovery: Google will provide available cost information for each design iteration of the functionality Apple accuses of infringement in this action. Google has committed to completing this production by September 4, 2013. Google will also provide Rule 30(b)(6) testimony on this subject matter.

### C. Other Discovery Issues

Apple and Google agreed in prior correspondence between them on the appropriate scope of production for five categories of documents. Google has committed to completing this production as quickly as possible on a rolling basis, and no later than September 4, 2013.

## III. The Parties' Positions and Proposed Compromises On The Remaining Issue

The parties have been unable to reach agreement on Document Request No. 43 and Deposition Topic No. 35 in Apple's Subpoena:

> **Document Request No. 43.** All Documents or Things comprising, or referring or relating to, comparisons between any feature of Android, or of any Motorola Accused Mobile Device, or any Android-based products, to any iPhone, iPad, iPod Touch, or to the iOS operating system, including comparisons relating to the unlocking or text autocorrect or autocomplete features of such devices, the Android Toast class, or the Google Play Store, or Android Market applications.

> **Deposition Topic No. 35.** Any comparisons between any feature of Android, or of any Motorola Accused Mobile Device, or any Android-based products, to any feature of any iPhone, iPad, iPod Touch, or to the iOS operating system, including comparisons relating to the unlocking or text autocorrect or autocomplete features of such devices, the Android Toast class, or the Google Maps, Places, Play Store, or Android Market applications.

### A. Apple's Statement of the Issues

Apple has accused Motorola of making, using, and selling forty-three mobile-device products that include Google's Android operating system and associated application software. Google designs and develops this Android software, which Apple alleges performs, supports, or enables all of the features that Apple has accused of infringement. Apple now seeks discovery relating to whether Motorola's parent, Google, has engaged in a habit and practice of copying features from Apple's products, including the iPhone and Apple's iOS software, to support its theories of damages, non-obviousness, and willfulness. The parties dispute whether Google need only produce documents on these topics if they discuss by name the features Apple has accused of infringement, or whether it must produce discovery relating to copying or comparisons between Android and Apple's products as a whole that show a practice of copying or benchmarking.

Substantively, Google does not dispute that evidence that features of Android or Android applications that are accused of infringement in the underlying case between Apple and Motorola were copied from Apple, or were the subject of "benchmarking" or comparisons between Android and the iPhone or iOS is relevant to several issues. For instance, this evidence is relevant to show awareness of Apple's intellectual property rights and thus is probative on the issue of willfulness. Evidence of copying is also relevant to the issue of patent validity as a secondary consideration of nonobviousness. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000).

Finally, this evidence would be relevant to show that Google placed a high value on the types of features Apple included in the iPhone and thus would affect the calculation of damages for Motorola's infringement of Apple's patents.

Discovery discussing copying or benchmarking of other features (or the iPhone or iOS as a whole) is also directly relevant to the same issues. This evidence would serve three purposes.

First, evidence of copying or benchmarking of numerous features of Apple's iPhone and iPad in Google's Android software and applications would demonstrate the existence of a widespread habit and practice of copying or comparisons between Android and the iPhone. This evidence of a widespread pattern of copying would allow a finder of fact to infer that the patented features were among those copied. In addition, the existence of a general pattern and practice of copying would corroborate other, more specific evidence Apple will introduce relating to copying of specific accused features. Google's citation to FRE 404 is without merit: the relevant rule is Federal Rule of Evidence 406, which specifically permits the admission of "[e]vidence of a person's habit or an organization's routine practice . . . to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Apple's requests could not be more directly tailored to this purpose.

Second, evidence that Google copied or engaged in comparisons between Android and the iPhone as a whole would be reasonably likely to lead to additional admissible evidence regarding the copying of specific accused features. For instance, documents relating generally to the copying of features of Apple's iPhone or iOS software into Google's Android products would allow Apple to identify relevant individuals from whom to seek deposition testimony and perhaps refresh their recollections using the documents, about Google's practice with respect to copying or benchmarking, and what specifically was copied or compared. Google's assertion that are no groups within Google who conduct or commission competitive analysis is contradicted by documents already uncovered, which Apple would be willing to provide to the Court upon request.

Third, this discovery is relevant to refute Motorola's (or Google's) claim that the accused features were not copied from the iPhone because Google's Android engineers simply did not engaged in comparisons of Android with the iPhone or copying of the iPhone. Apple has already

taken the deposition of one Google Rule 30(b)(6) designee, Ken Wakasa, who was shown documents (some of which he is a listed recipient of) explicitly describing comparisons between a specific accused feature (the touchscreen keyboard and text correction) in Android and in Apple's iPhone. Mr. Wakasa denied recollection of these documents and denied that he or Google had investigated the iPhone features discussed in those documents or the iPhone generally, suggesting that the documents were somehow an aberration and that Google designers did not regularly conduct competitive analyses. This strongly suggests that Motorola or Google witnesses will testify at trial that the specific accused features were not copied and that Google's Android engineers never copied Apple or the iPhone. Evidence of widespread or general copying of or comparisons between Android and the iPhone would directly undermine the credibility of these. Contrary to Google's assertion, it isn't that Apple "doesn't like" the answers Google's witnesses gave – it is that Apple believes the documentary evidence, which explicitly describe comparisons to Apple's products -- directly contradicts this testimony. Apple is entitled to discovery to use in impeaching these claims.

Google's descriptions of both what Apple seeks and the documents it has produced are regrettably inaccurate. Google's statement that it has already produced documents relating to copying or benchmarking of the accused features is without basis. Google's has not even searched for, much less produced, any such documents for at least one of the patents (the "'332 patent") at issue, as the parties are still in the process of negotiating search terms for that patent. Apple is not requesting that Google perform and unrestricted search for all copying documents but rather has worked to confine the search to a limited (and agreed-upon) number of custodians. Likewise, Apple has offered to exclude documents of peripheral relevance or undue burden (e.g. documents mentioning irrelevant features like color, or documents mentioning Apple and Android in non-germane ways, like e-mail tag lines). Google has refused to discuss this. Crucially, Apple's proposed compromise is actually ***less burdensome*** than Google's proposal under which it would ***perform the same searches for the same custodians***. The difference between the proposals is that Google proposes that after it conducts the agreed-upon searches, it will then go through the additional exercise of removing documents that evidence copying or benchmarking of what it considers to be unaccused functionality. This cannot reasonably be less burdensome.

Google's citation to *Apple v. Samsung* is also without merit – that case involved an entirely different set of discovery requests and circumstances. If the Court is inclined to consider Google's argument on that point, Apple requests leave for a brief further submission on the matter.

**B. Google's Statement of the Issues**

It is important for the Court to understand what is in dispute, and what is not. Google has already searched for and produced documents concerning the use, development, and implementation of each functionality accused by Apple of infringement in this action – what the parties commonly call the "accused features." Google has provided its search terms and custodian lists to Apple and cooperated with Apple to run additional search terms, over additional custodians, at Apple's request. (Apple says that Google has not searched for one of the patents, but that is not true; Google has searched for all the patents, and has allowed Apple to propose additional search terms and custodians for all the patents.) In producing documents regarding the accused features, Google did not exclude documents if they mentioned any Apple product or feature. Thus Apple already has all the documents it needs regarding the accused features. In addition, Google did not exclude documents that addressed the accused features in one place, and mentioned any Apple product or feature somewhere completely different. Thus Apple also has many of the documents it now seeks – which concern alleged copying or comparisons *unrelated* to the accused features, should those documents also address the accused features *anywhere else*. Thus this dispute concerns only a single category of documents: those regarding alleged copying or comparisons between Android and Apple products, but which have *no relation whatsoever* to the accused features in this action.

Apple tenders several arguments to support its request for these documents; all fail. First, Apple alleges that these documents are "relevant to the issue of patent validity as a secondary consideration of nonobviousness." To support this point Apple cites only a single case, *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 26 (Fed. Cir. 2000), which stands merely for the unremarkable proposition that courts must apply the factors laid out by the Supreme Court in the case that established the nonobviousness framework. *Apple Computer*, 234 F.3d at 26 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)). But the *Graham* factors

undercut Apple's request, rather than support it: the Supreme Court explained in that case that nonobviousness analysis addresses "the origin of the subject matter sought to be patented." *John Deere*, 383 U.S. at 17. After *Graham*, the Federal Circuit has consistently checked nonobviousness evidence for "a nexus between the evidence and the merits of the *claimed invention*." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (emphasis in original). Here, even Apple does not even allege that the documents it seeks have any nexus to its claimed inventions; instead Apple explicitly seeks documents that admittedly have *no nexus whatsoever*. These documents cannot be relevant to show secondary considerations: they are the definition of irrelevance.

No doubt aware of these weaknesses, Apple next suggests that the jury could somehow infer from *unrelated* evidence of *unrelated* alleged "copying" by *other* Google personnel that the engineers working on the accused features also "copied" Apple – even though Apple cannot show this from the direct evidence. This too fails. Google has already produced any documents concerning alleged "copying" of the accused features, and has or will produce its engineers to testify about them. Having failed to find the *direct* evidence it evidently sought, Apple now asks the Court to order a production of alleged *indirect* evidence – instead of accepting, as it should, that no alleged "copying" occurred. Apple's request is a classic fishing expedition: although Google has already produced documents directly regarding Apple's stated issues, Apple evidently does not like what it has received, and therefore seeks more and more documents. Worse still, Apple seeks this indirect evidence for an admittedly improper purpose. The Federal Rules of Evidence prohibit use of character evidence and evidence of other acts to show that a party acted similarly in other situations – *precisely* what Apple *admits* it wishes to do here. Fed. R. Evid. 404; *see, e.g., Weitz Co., LLC v. MacKenzie House LLC*, 665 F.3d 970, 975 (8th Cir. 2012), *cert. denied*, 132 S. Ct. 2783 (2012) (affirming district court's exclusion of evidence regarding unrelated projects involving the parties on grounds as inadmissible under Rule 404). Thus Apple's own argument shows that its request is not "reasonably calculated to lead to the discovery of admissible evidence," and therefore cannot require production under Fed. R. Civ. P. 26. Apple now argues that Fed. R. Evid. 406 supports its efforts, but this too is incorrect. Habit "describes one's regular response to a repeated specific situation." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 705 F. Supp. 2d 1265, 1269

(D.N.M. 2010) (citing E. Cleary, *McCormick on Evidence* § 162, at 340). Examples include "going down a particular stairway two stairs at a time, or . . . giving the hand-signal for a left turn, or . . . alighting from railway cars while they are moving." *Id*. In the organizational context, a routine practice must be "reasonably regular and uniform." *United States v. Oldbear*, 568 F.3d 814, 822 (10th Cir.2009) (quoting, in parenthetical, K. Broun, 1 *McCormick on Evidence* § 195 (6th ed)). Routine practices include things like routine procedures for screening applications for tenure or processing applications. *Guidance Endodontics*, 705 F. Supp. 2d at 1269. Routine procedures for screening applications are, of course, very different from individual engineers working on different applications. In any event, if Google really had a "regular and uniform" practice of copying Apple, Apple's lawyers would have found it in the documents Google has already produced. They did not, because there is not.

Similarly and equally unsuccessfully, Apple argues that evidence of *unrelated* alleged "copying" will somehow lead to direct evidence of *related* alleged "copying." Here Apple's own argument belies its point: only one sentence after Apple states that it must have broad discovery to find the culpable culprits within Google, Apple admits that it has already "uncovered" those culprits and is aware of them. If Apple has already found the culprits through its existing discovery, it does not need more discovery from Google. And if such a group existed and worked on the accused features, *Google would already have produced its documents* under its current agreed scope of production. If Apple's bare-bones assertion that other evidence *might turn up* if we just look *everywhere* were sufficient to allow discovery, then the limits of Rule 26 would have no meaning. Similarly, Apple argues that it should obtain discovery because it didn't like the answers Google's witness provided at a deposition – a deposition regarding a patent Apple has already dropped from the underlying case. Of course no questioning party likes all the answers it receives at a deposition; were this sufficient to provide *carte blanche* for more discovery, once again Rule 26 would be a dead letter. This Court does not countenance such arguments. *Intermec Techs. Corp. v. Palm, Inc.*, No. 3:09-mc-80097-WHA (N.D. Cal. May 15, 2009) (a party's own assertions that discovery is "reasonably calculated to lead to the discovery of admissible evidence" cannot suffice to require

production). (Apple again argues that documents *it already has* contradict this testimony. But that does not give Apple license to seek discovery of still more documents.)

Apple alleges that its proposal is less burdensome than Google's proposal because Google has offered to "***perform the same searches for the same custodians***." This is a stellar example of no good deed going unpunished. Google does not think it should be required to do any additional discovery on this topic at all, but agreed to negotiate regarding search terms and custodians in response to this Court's command, in its Standing Order Regarding Civil Discovery Disputes, that each party set forth its "final and 'most reasonable' proposal" for the Court to decide. The Court should decline Apple's invitation to penalize Google for its efforts to be reasonable.

Apple's request must fail for one more reason: this Court has already rejected it in another case. *Apple Inc. v. Samsung Elecs. Co., Ltd. et al.*, No. 12-630, Docket No. 164 (N.D. Cal. May 7, 2012). *Apple v. Samsung* is another Apple patent action against Android; there, Apple sought documents from defendant Samsung concerning "any comparison Samsung made between any Apple product and any Samsung smartphone or tablet computer." *Id.* at 2. Samsung agreed to produce documents concerning the accused features, arguing that any other copying "has nothing to do with whether Samsung copied any of the four accused features." *Id.*, Docket No. 104 at 1 (N.D. Cal. Apr. 18, 2012). Apple replied "that a wider net is necessary to highlight to the court the systematic and widespread effort Samsung has made to copy Apple products." *Id.*, Docket No. 164 at 7 (N.D. Cal. May 7, 2012). The Court ruled with Samsung, noting that "Apple offers no basis upon which the court could reasonably limit Samsung's burden. In other words, the court can think of no line it could draw, other than one focused on the accused features, that would respect the norms of proportionality applicable under Rule 26 even in a well-resourced, high-stakes case like this." *Id.* The Court thus found that "Apple is entitled to take discovery on the four accused features as they are contained on" the single device then at issue. *Id.* This Court should follow that sensible ruling and adopt Google's sensible proposal below. (Apple seeks further briefing on this point; the Court should decline this attempt to evade its page limits but, should it decide otherwise, Google requests the opportunity to reply.)

## IV. Each Party's Final & Most Reasonable Proposal

### A. Apple's Proposal

Apple offered the following compromise with respect to this discovery: Google will produce non-privileged documents located using an agreed search protocol. Specifically, Google will apply search terms agreed by Apple and Google to custodial documents from a limited set of custodians, including only the documents and email of Andy Rubin; Sundar Pichai; the Android user experience (UX) group; and Google's already existing (previously-collected) custodians for this action. The parties will negotiate in good faith to arrive at a reasonable set of search terms designed to identify documents describing comparisons between Android or Android applications and Apple products, such that the production does not unduly burden Google. Apple agrees that it will work with Google to limit its terms to avoid hits on large numbers of irrelevant or peripheral documents (e.g. documents describing comparisons relating to incidental attributes such as color or size of Apple and Android devices, and documents that mention Apple in an irrelevant way, such as in an email signature). This search shall not be limited to the accused features, but shall be limited to the custodians identified in the previous sentence. Production should be complete within two weeks.

### B. Google's Proposal

Although Google has already exhaustively searched for documents regarding the accused features – including of course any documents also relating to alleged "copying" – Google is again willing to bend over backwards to reassure Apple that it has nothing to hide. To that end, Google will agree to Apple's proposal above with two exceptions. First, of course, the scope of its production and testimony will be limited to the accused features. Google has already provided these documents and some testimony. Second, Apple's request for document production in two weeks is unreasonable. Apple is in no hurry: fact discovery ends on November 1, 2013, so there is plenty of time for a reasonable schedule. And two weeks is not reasonable: negotiating over search terms routinely takes 2-3 weeks as the parties exchange proposals and counterproposals. Should the

Court feel any need to set a schedule on discovery, it should order that Google complete its discovery within a quite short four weeks after the parties agree on the applicable search terms.

Respectfully submitted,

Dated: August 1, 2013

*/s/ Anne M. Cappella*__________
ANNE M. CAPPELLA (Bar No. 181402)
(anne.cappella@weil.com)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3141
Facsimile: (650) 802-3100

Mark G. Davis*
(mark.davis@weil.com)
Robert T. Vlasis*
(robert.vlasis@weil.com
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W., Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
*Admitted *pro hac vice*

Kenneth H. Bridges
(kbridges@bridgesmav.com)
Michael T. Pieja
(mpieja@bridgesmav.com)
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real, 2nd Floor
Palo Alto, CA 94306
Telephone: (650) 804-7800
Facsimile: (650) 852-9224

***Attorneys for Apple Inc.***

*/s/ Matthew S. Warren*______________
Amy H. Candido
amycandido@quinnemanuel.com
Matthew S. Warren
matthewwarren@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California Street, 22nd Floor
San Francisco, California 91111-4788
(415) 875-6600
(415) 875-6700 facsimile

***Attorneys for Google Inc.***

**ATTESTATION OF E-FILED SIGNATURES**

I, Anne M. Cappella, am the ECF user whose ID and password are being used to file this Discovery Dispute Joint Report No. 1. In compliance with General Order 45.X.B, I hereby attest that Amy H. Candido and Matthew H. Warren have concurred in this filing.

August 1, 2013 *<u>/s/ Anne M. Cappella</u>*